**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID L. MCGANN, | ) | |
| | ) | CASE NO.  1:09-cv-00365 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff David L. McGann ("McGann") challenges the final decision of the

Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying his claim for a

Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security

Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§

416(i), 423, 1381 *et seq*.  The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is

before the undersigned United States Magistrate Judge pursuant to the consent of the parties

entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this Court AFFIRMS  the final decision of the

Commissioner.

## I.  Procedural History

On August 16, 2006, McGann filed an application for POD, DIB, and SSI alleging a

disability onset date of January 6, 2006, and claiming that he was disabled due to mental illness

and a knee injury.  His application was denied both initially and upon reconsideration.  McGann

timely requested an administrative hearing.

On March 14, 2008, an Administrative Law Judge ("ALJ") held a hearing during which

McGann, represented by counsel, testified.  Deborah Lee testified as a vocational expert ("VE").

On May 9, 2008, the ALJ found McGann was able to perform a significant number of jobs in the

national economy and, therefore, was not disabled.  The ALJ's decision became the final

decision of the Commissioner when the Appeals Council denied further review.

On appeal, McGann claims the ALJ erred because: (1) his findings were not supported by

substantial evidence; and (2) he failed to accord appropriate weight to the opinions of his treating

physicians.  (Pl.'s Br. at 7-12.)

## II.  Evidence

### *Personal and Vocational Evidence*

Born on December 6, 1965 and age forty-two (42) at the time of his administrative

hearing, McGann is a "younger person" under social security regulations.  *See* 20 C.F.R. §§

404.1563(c) & 416.963(c).  McGann has a high school diploma and past relevant work as a

machinist.

***Medical Evidence***[1]

On November 13, 2006, McGann was evaluated by clinical psychologist Ronald Smith, Ph.D., at the request of the State Bureau of Disability Determination.  (Tr. 209-11.)  McGann told Dr. Smith that he was not as sociable as in the past, was more withdrawn, suffered from daily crying spells, and felt nervous around other people.  (Tr. 210.)  He stated that he had never undergone psychiatric treatment and denied having any suicidal feelings.  *Id*.  He admitted to crack cocaine use from 1991 to 1993, but denied any current use.  (Tr. 211.)  Upon examination, McGann weighed 320 pounds with a height of 6'2".  *Id*.  He was co-operative and direct and to the point with his responses.  *Id*.  His thinking was well-organized and showed appropriate affective expression.  *Id*.  Furthermore, he was alert, had good contact with reality, and was well-oriented to time and place.  *Id*.  He could count backwards from twenty to one in nine seconds, recite the alphabet in eight seconds, count from one to forty by threes in twenty seconds without error, and remember five digits forward and four digits backwards.  *Id*.  Dr. Smith opined that McGann appeared capable of handling funds if they were awarded, his ability to maintain attention and concentration may be compromised at times by knee pain, and his complaining caused him to be easily distracted.  *Id*.  Dr. Smith asserted that McGann has the ability to follow simple one or two step job instructions and would be fairly good on a cognitive basis subject to his physical limitation, but that his ability to relate to the public and to supervisors may be somewhat impaired due to his preference for being alone and self isolation.  *Id*.  Dr. Smith diagnosed McGann with adjustment disorder with anxiety and depressed mood, ascribing him a

---

[1]  Because McGann only alleges error with respect to the ALJ's assessment of his mental limitations, the medical evidence does not include a recitation of the evidence relating to McGann's physical impairments.

Global Assessment of Functioning ("GAF") score of sixty (60).[2]  *Id.*

On November 15, 2006, Tonnie Hoyle, Psy.D., a reviewing state agency psychologist, found McGann had a non-severe adjustment disorder with anxiety and depressed mood.  (Tr. 216.)  In support of her findings, Dr. Hoyle noted McGann was able to perform activities of daily life independently, maintained relationships with his wife and mother, and, during the clinical examination, was able to interact and cooperate with Dr. Smith appropriately.  (Tr. 225.)  Dr. Hoyle assessed only mild limitations in McGann's ability to maintain social functioning, concentration, persistence, and pace.  *Id.*  In addition, Dr. Hoyle noted that McGann lacked a history of inpatient or outpatient treatment for psychological concerns.  *Id.*

On April 25, 2007, Linton Overholt, a Licenced Professional Clinical Counselor, completed an Adult Diagnostic Assessment.  (Tr. 279-94.)  McGann sought treatment for anger, anxiety, and depression.  (Tr. 287.)  He reported having a short-temper which worsened in the past two years.  *Id.*  McGann also reported the following: feeling hopeless, helpless, and worthless; having poor energy and motivation; having thoughts of self-harm without plan or intent; having problems with attention, focus, and concentration in the past six months; and, having a history of cocaine dependence from 1990 to 2000.  *Id.*  Overholt diagnosed McGann with depressive disorder not otherwise specified ("NOS"), anxiety disorder NOS, and cocaine dependence in full remission.  (Tr. 288.)  He ascribed McGann a GAF score of 60.  *Id.*  Overholt recommended that McGann needed to remain clean and sober, needed an increase in coping

---

[2]  A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers.  *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

skills, and needed control of his symptoms through use of medication as prescribed. *Id*.

On May 3, 2007, McGann began treatment with Praveen Abraham, D.O., to address his anger problems. (Tr. 295.) McGann had also complained of cognitive problems stemming from an earlier head injury. *Id*. Dr. Abraham noted McGann had no prior suicide attempts, no psychiatric hospitalizations, and was not taking psychiatric medication. *Id*. He also noted McGann's past history of cocaine dependence. *Id*. Upon examination, McGann was alert, attentive and cooperative; he was expressive and did not exhibit any anger or irritability towards the examiner; and, there was no evidence of psychosis. (Tr. 296.) His thoughts, though prone to circumstantiality, were coherent and intelligible. *Id*. He did not have any gross cognitive deficits or manifest focal neurological deficits, and his insight and judgment appeared to be fair. *Id*. Dr. Abraham diagnosed McGann with bipolar disorder NOS with psychotic features and cocaine

dependence in sustained full remission. He ruled out mental disorder secondary to a head injury. *Id*. He assigned McGann a GAF score of 55 to 60. *Id*. Dr. Abraham prescribed Seroquel and recommended psychotherapy. (Tr. 297.)

On May 2, 2007, McGann told Dr. Abraham that his medication had minimal, if any, benefit with respect to his anger issues. (Tr. 304.) McGann reported significant improvement with anxiety, though it was unclear if his depression had improved. *Id*.

On June 7, 2007, McGann began psychotherapy with Thomas Haglund, Ph.D. (Tr. 305.) McGann reported that his wife suffered from obsessive compulsive disorder and that his marriage was in poor shape. *Id*. McGann agreed to meet Dr. Haglund on a regular basis to discuss anger management. *Id*.

On June 15, 2007, McGann was seen by Dr. Abraham, who discontinued Seroquel and started a prescription for Zyprexa, as McGann reported no improvement.  (Tr. 307.)

On June 21, 2007, McGann met with Dr. Haglund and discussed anger management issues.  (Tr. 308.)

On July 6, 2007, Dr. Abraham noted that McGann tolerated the Zyprexa better than the Seroquel, but experienced reduced anger control as compared to the previous medication.  (Tr. 309.)  Dr. Abraham increased the dosage of Zyprexa.  *Id.*

On July 12, 2007, McGann met with Dr. Haglund and reported a relatively uneventful, stress-free two weeks.  (Tr. 310.)  Dr. Haglund found McGann's mood and affect were within normal range, his thought process was alert and oriented, and his behavior and functioning were adequate.  *Id.*

On July 20, 2007, Dr. Abraham noted that McGann's anger "may be better controlled," and that McGann's anxiety and auditory hallucinations were largely suppressed.  (Tr. 311.)  Dr. Abraham continued McGann on the Zyprexa and reported that McGann had made moderate progress toward symptom control and psychiatric stability.  *Id.*

On July 26, 2007, McGann reported to Dr. Haglund that he had not encountered any situations that made him angry and that he had not had bad or gloomy thoughts.  (Tr. 312.)  McGann reported that the previous night he had an auditory hallucination, but that this occurred only occasionally.  *Id.*

On August 3, 2007, McGann met with Dr. Abraham and reported that his anger was significant, but not worse, and that his depression was mostly contained.  (Tr. 313.)  Dr. Abraham continued McGann on Zyprexa and added Depakote.  *Id.*

On August 9, 2007, Dr. Haglund noted that McGann had not encountered any situations to trigger anger away from home, and that his frustration tended to center on his wife's controlling behavior.  (Tr. 314.)  Dr. Haglund suggested that McGann try an anger management group.  McGann was not interested due to his past experiences with groups.  *Id*.

On August 24, 2007, McGann told Dr. Abraham there was a "possible reduction" in anger, no suicidal ideation, minimal depressive swings, and no feelings of panic.  (Tr. 315.)  He also reported there were no overt side effects from medication, but his sleep continued to be excessive.  (Tr. 315.)

On September 6, 2007 and September 20, 2007, McGann reported to Dr. Haglund that he had not had any situations come up that triggered anger.  (Tr. 318, 319.)  However, he complained of feeling sedated on Depakote.  *Id*.  Dr. Abraham later reduced the dosage of Depakote.  (Tr. 320.)  Dr. Abraham noted McGann had no depression or suicidal ideation, no extreme anger, nor any auditory hallucinations, and he added Lithium to McGann's medication regimen.  *Id*.

On October 4, 2007, Dr. Haglund and McGann agreed to meet monthly because McGann reported he was doing well and was not encountering situations that triggered his anger.  (Tr. 321.)

On October 15, 2007, Dr. Haglund completed a six-month review sheet.  (Tr. 298-99.)  With respect to McGann's current functioning over the past six months, Dr. Haglund wrote that McGann was doing better, was more relaxed, and did not experience any major flare-ups.  (Tr. 299.)

On October 30, 2007, Dr. Abraham indicated that McGann's anger was being managed,

7

though McGann was experiencing some side effects from his medications.  (Tr. 322.)  Dr.

Abraham also indicated there were no auditory hallucinations, no depression or suicidal ideation,

and that McGann's racing thoughts were better.  *Id*.  Dr. Abraham adjusted McGann's

medications and noted that McGann was stable and that he had made improved progress toward

the goals of symptom control and psychiatric stability.  *Id*.

On November 29, 2007, McGann presented to Dr. Haglund feeling depressed because his

mother had a heart attack, which required surgery, and she was also diagnosed with lung cancer.

(Tr. 325.)  McGann also complained that he was having auditory hallucinations again.  *Id*.  The

same day, Dr. Abraham saw McGann and noted his auditory hallucinations were back; McGann

had no suicidal thoughts; depression was present, but seemed attenuated in severity.  (Tr. 324.)

McGann had no anger outbursts, although McGann insisted there was no provocation.  *Id*.  Dr.

Abraham adjusted McGann's medications and added Risperdal.  *Id*.

On December 13, 2007, McGann reported to Dr. Haglund that his mood was up and

down due to his mother's health issues.  (Tr. 326.)

On January 10, 2008, McGann's mood and affect had improved after having a difficult

holiday period, he was alert and oriented, and he had adequate behavior and functioning (Tr.

332).

On February 8, 2008, Dr. Abraham noted McGann had numerous stressors, but his

mother had made some good progress; McGann denied having any auditory hallucinations since

starting the Risperdal.  (Tr. 331.)

On March 12, 2008, Dr. Abraham completed a mental functional capacity assessment

questionnaire for the Ohio Department of Jobs and Family Services.  (Tr. 336-37.)  Dr. Abraham

8

opined McGann was unemployable and that his limitations were expected to last between thirty days and nine months.  (Tr. 336.)  Dr. Abraham opined that McGann was markedly limited in his ability to maintain attention and concentration for extended periods, to work in coordination with or in proximity to others without being distracted, to complete a normal workday without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.  *Id*.  He further opined that McGann was moderately limited in his ability to understand, remember, or carry out detailed instructions; and, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  *Id*.  Dr. Abraham also opined that McGann was markedly limited in his ability to interact appropriately with the general public, accept instructions, and respond appropriately to criticism from supervisors.  He felt McGann was also moderately limited in his ability to get along with coworkers without distracting them or exhibiting behavior extremes.  *Id*. With respect to the area of adaptation, Dr. Abraham opined that McGann was moderately limited in his ability to set realistic goals.  *Id*.

On March 12, 2008, Dr. Haglund wrote McGann "has shown some recent improvement with medication but is not able to work at this time."  (Tr. 337.)  In support of this opinion, Dr. Haglund wrote: "Client is taking medication for bipolar disorder.  His symptoms include psychomotor agitation, extreme irritability, racing thoughts, increased speech and diminished sleep alternating with depressed mood, inability to experience pleasure, poor concentration, suicidal thoughts and increased appetite.  Client also hears a spoken voice or a phone ringing." *Id*.

***Hearing Testimony***

McGann testified that he sought mental health treatment after his wife's counselor

suggested he needed help after an outburst of anger.  (Tr. 35-36.)  He testified that he did not like

to be around people and that seeing people doing stupid things aggravated him.  (Tr. 39.)  He

testified he has had many employers because his anger flare-ups caused him to get into many

disputes and walk off of jobs.  (Tr. 40-41.)  He last worked on January 6, 2006 but agreed with

his employer to cease his employment after experiencing a bout of depression.  (Tr. 46.)   He

also testified that his wife's behavior also, at times, caused him to become irritated and angry.

(Tr. 41-42.)   He stated he had heard voices or the telephone ringing since childhood.  (Tr. 45.)

McGann testified that he first received treatment for psychological impairments at the Nord

Center.  *Id.*  McGann stated that he applied for disability benefits due to the number of jobs he

had lost because of his bipolar disorder.  (Tr. 51-52.)  He asserted that he could wash his clothes

and would go grocery shopping at night with his wife in order to avoid waiting in long lines.

(Tr. 58-59.)

The VE testified that, according to the Dictionary of Occupational Titles, McGann's past

relevant work as a machinist was skilled and performed at the medium exertional level.  (Tr. 62.)

However, the VE testified that, based on McGann's testimony, his past relevant work was

performed at the heavy or possibly even the very heavy exertional levels.  *Id.*  The ALJ asked

the VE to consider a hypothetical individual with the following limitations:

> This person world be 40 at the date of onset, and have a twelfth grade educations
> and a vocational background identical to that of Mr. McGann's.  This individual
> would be at the medium level exertionally.  By that, I mean, specifically they can
> lift up to 50 pounds occasionally and carry the same amount.  Lift and carry 25
> pounds frequently.  Stand and/or walk for 6 hours out of an 8-hour day.  Sit for at
> least 6 hours out of an 8-hour day and they could push or pull up to 50 pounds

occasionally and to 25 pounds frequently.  This person could occasionally climb ramps and stairs.  They could occasionally climb ladders, ropes and scaffolds and they could occasionally kneel, crouch or crawl.  They would be limited to simple routine work and would be able to have superficial interaction with co-workers and the public, but without negotiation or confrontation with neither group.

(Tr. 62-63.)

The VE testified such an individual could not perform any of McGann's past relevant work, but could perform other work, such as working as a hand packer (14,000 jobs in Northeast Ohio; 49,200 in Ohio; 872,260 nationwide), a machine feeder/offbearer (6,420 jobs in Ohio; 156,600 nationwide), and an assembler (3,400 jobs in Northeast Ohio; 19,400 in Ohio; 299,900 nationwide).  (Tr. 63-65.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[3]

---

[3]  The entire five-step process entails the following: First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

11

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

McGann was insured on his alleged disability onset date, January 6, 2006, and remained insured through the date of the ALJ's decision, May 9, 2008.  (Tr. 11.)  Therefore, in order to be entitled to POD and DIB, McGann must establish a continuous twelve month period of disability commencing between January 6, 2006 and May 9, 2008.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits under the Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 & 416.1201.

### IV.  Summary of Commissioner's Decision

The ALJ found McGann has medically determinable, severe impairments, due to degenerative joint disease of the left knee, obesity, and bipolar disorder; however, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ further found that McGann is unable to perform his past work activities, but has a Residual Functional Capacity ("RFC") for a limited range of medium work.  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that McGann is not disabled.

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI.  Analysis

McGann claims the ALJ erred because: (1) his findings were not supported by substantial evidence; and (2) he failed to accord appropriate weight to the opinions of his treating physicians.  Each will be discussed in turn.

### *Treating Physicians*

McGann argues that the ALJ should have accorded controlling weight to the opinions of his treating psychologist and psychiatrist, Dr. Haglund and Dr. Abraham, who opined that he was unemployable.

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence

in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6ᵗʰ Cir. 2006) (*quoting* 20

C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent

with the other substantial evidence in the case record means only that the opinion is not entitled

to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399 (6ᵗʰ Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*,

192 F. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating

physician is generally entitled to more weight than other medical opinions.) Furthermore,

"[t]reating source medical opinions are still entitled to deference and must be weighed using all

of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[4]

Nonetheless, the opinion of a treating physician must be based on sufficient medical data,

and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431,

435 (6ᵗʰ Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6ᵗʰ Cir. 1993); *Blakley*, 581 F.3d at

406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a

treating source if it is not well-supported by medically acceptable clinical and laboratory

diagnostic techniques or if it is inconsistent the with other substantial evidence in the case

record.") (*quoting* SSR 96-2p).

In a medical functional capacity assessment, Dr. Haglund recited McGann's symptoms,

---

[4] Pursuant to 20 C.F.R. § 404.1527(d), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

listed his medications, and noted some recent improvement, but concluded that McGann is unable to work. Dr. Haglund's opinion that McGann is unemployable does not constitute a medical opinion, and, therefore, is not entitled to any special weight. An opinion that a claimant is disabled is an issue expressly reserved for the Commissioner and does not constitute a medical opinion. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled," as it is the Commissioner who must make the final decision on the ultimate issue of whether an individual is able to work. *See* 20 C.F.R. § 404.1527(e)(1); *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982). Also, a mere diagnosis or catalogue of symptoms does not indicate the functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment); *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224,1227 (6th Cir. 1988) (signs of arthritis not enough; must show that condition is disabling).

Finally, the ALJ explained that he was ascribing little weight to both the opinions of Dr. Abraham and Dr. Haglund that McGann was unable to work because "they are not supported by their own treatment notes from the Nord Center which are in the record including Dr. Abraham's GAF assignment of 55-60. . . . Moreover, as noted above Dr. Haglund opined the claimant is improving with treatment." (Tr. 17.) It is not error for an ALJ to reject medical opinions that are inconsistent with a treating physician's own treatment notes. *See, e.g., Anderson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 366, 370 (6th Cir. 2006); *Poe v. Comm'r of Soc. Sec.*, 2009 U.S. App. LEXIS 18762 at *19 (6th Cir. 2009); *Thompson v. Astrue*, 2009 U.S. Dist. LEXIS 50070 (M.D.

Tenn. Jun. 11, 2009). While Dr. Abraham found marked limitations in several areas, these findings contradict his initial assessment that McGann had only moderate symptoms or moderate difficulty in social, occupational, or school functioning as indicated by his GAF score. (Tr. 296, 336.) McGann argues that Dr. Abraham's initial assessment that McGann had a GAF score of 55-60 was "presumptive with the expectation that his illness would respond to the prescribed medication." (Pl.'s Br. at 11.) Dr. Abraham's diagnosis, however, expressly states that McGann's GAF score was "[c]urrently 55 to 60." (Tr. 296.)[5] Furthermore, the record is replete with references in both Dr. Abraham's and Dr. Haglund's notes that McGann was improving and had better control over his symptoms. Despite such improvement, Dr. Abraham opined that McGann had marked limitations in several areas – a finding that would indicate that McGann's mental impairments had actually increased in severity rather than improved. The ALJ found, therefore, that his opinion was inherently contradictory.

Dr. Haglund's opinion that McGann was unable to work contains no discussion of McGann's limitations. (Tr. 337.) Just over a month after beginning treatment, Dr. Haglund noted that McGann's mood and affect were within normal range, his thought process was alert and oriented, and his behavior and functioning were adequate. (Tr. 310.) In September of 2007, Dr. Abraham noted McGann had no depression or suicidal ideation, no extreme anger, nor any auditory hallucinations. (Tr. 320.) In October of 2007, Dr. Haglund and McGann agreed to

---

[5] Building upon this argument, McGann suggests that he had met the twelve month durational requirement, because Dr. Abraham's conclusion that he could return to work within thirty days to nine months was given on March 12, 2008 – more than a year after his alleged onset date. (Pl.'s Br. at 11.) McGann mistakenly attributes this conclusion to Dr. Haglund. (Tr. 336.) However, the ALJ, by ascribing little weight to the opinion of Dr. Abraham, clearly found that McGann's impairment was not of disabling severity even on the date when Dr. Abraham concluded that McGann could not maintain employment.

meet monthly because McGann reported he was doing well and was not encountering situations that triggered his anger.  (Tr. 321.)

As such, the ALJ did not err by opting not to give controlling weight to these opinions.

*Residual Functional Capacity Determination*

McGann argues that substantial evidence does not support the ALJ's RFC finding that McGann can perform simple, routine work, with only superficial interaction with coworkers and the public, and without negotiation or confrontation.  (Pl.'s Br. at 11.)

RFC is an indication of an individual's work related abilities despite their limitations. *See* 20 C.F.R. § 416.945(a).  A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner.  *See* 20 C.F.R.§ 416.945(e).  As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 416.945(a).

In this case, there is substantial evidence of record capable of supporting the ALJ's mental RFC determination that McGann was "limited to simple routine work which involve[d] superficial interaction with coworkers and the public without negotiation and confrontation." (Tr. 15.)  McGann asserts that the ALJ's mental RFC finding was based solely on Dr. Abraham's finding of a GAF score of 60, and that the ALJ ignored other pertinent evidence.  (Pl.'s Br. at 11.)  However, McGann's argument that the ALJ ignored other evidence is simply inaccurate. First, both consultative examiner Dr. Smith and professional clinical counselor Overholt also assessed McGann's GAF as a 60.  (Tr. 211, 288.)  Furthermore, following the consultative exam, Dr. Smith opined that McGann's ability to follow simple one-or-two-step job instructions would be fairly good on a cognitive basis subject to physical limitations, but that "[h]is ability to relate

17

to the public, coworkers, and supervisors may be somewhat impaired due to his preference for being alone and some degree of self isolation." (Tr. 15, 211.) In addition, the ALJ's mental RFC finding was partially supported by Dr. Haglund's opinion that McGann was improving with medication. (Tr. 14, 337.) Finally, the ALJ's conclusion was, to some extent, supported by Dr. Abraham's questionnaire responses in which he found that McGann was either "not significantly" or "moderately" limited in most categories. (Tr. 336.) As the ALJ's conclusions are supported by the opinions of several medical sources (Tr. 211, 225, 336), McGann's argument is without merit.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

s/ Greg White
U.S. Magistrate Judge

Date: January 14, 2010